**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CYNTHIA DAWSON, | ) Case No. 5:13-cv-00881-PSG |
| Plaintiff, | ) **ORDER GRANTING-IN-PART** |
| | ) **DEFENDANT'S MOTION FOR** |
| v. | ) **SUMMARY JUDGMENT AND** |
| | ) **DENYING PLAINTIFF'S MOTION** |
| NEW LIFE COMMUNITY SERVICES, | ) **TO STRIKE** |
| Defendant. | ) **(Re: Docket Nos. 48, 62)** |
| | ) |

In this housing discrimination case, Plaintiff Cynthia Dawson and Defendant New Life Community Services agree on the preliminary details of the event at issue. Dawson was admitted as a resident of NLCS' drug and alcohol rehabilitation program in April, 2012, but she was discharged just a month later, five months shy of her expected departure date. The question is, was she discharged because she was not participating in the program as required, or was she discharged because she had mental and physical disabilities? Because there is both testimony and contemporaneous evidence that could support either answer, the court DENIES NLCS' motion for summary judgment as to most claims, but GRANTS the motion as to those claims that rely on theories not previously plead.

1

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. BACKGROUND

NLCS operates a residential drug and alcohol rehabilitation program in Santa Cruz, California.[1]  New Life Center provides housing for people enrolled in the program; NLCS also operates an emergency shelter in the same facility for individuals in crisis.[2]  Residents in the rehabilitation program are expected to complete chores, look for work, attend school, or participate in community service, as well as attend programming and therapy meetings.[3]  Although the program has procedures in place for residents who require medical attention, it does not maintain a medical staff on site.[4]  Because of the program's fairly strict requirements, about two-thirds of those who enroll do not complete the program.[5]  Approximately half of those who do not complete the program leave of their own volition; the other half are "involuntarily discharged" for failing to meet the program's requirements.[6]

Dawson applied for NLCS' residential program in February of 2012.[7]  At that time, she provided NLCS with information about her physical and mental issues including diabetes, bipolar disorder, obsessive compulsive disorder, and post-traumatic stress disorder.[8]  NLCS nonetheless admitted her to their program, and she took up residence on April 24, 2012.[9]

---

[1] *See* Docket No. 50 at 2-3.

[2] *See id.*

[3] *See* Docket No. 50-3.

[4] *See* Docket No. 50 at 2.

[5] *See* Docket No. 49-2 at 8.

[6] *See id.*

[7] *See* Docket No. 57-9 at 6-7.

[8] *See id.*

[9] *See* Docket No. 50-6.

2

Case No. 5:13-cv-00881-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO STRIKE

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Conflicts between Dawson and the NLCS staff began shortly after her arrival.   On May 9, 2012, Dawson was moved to a new room and assigned the bed in the middle of the room.[10] Dawson's PTSD requires that she sleep next to a wall, so she went to Ken Barclay, NLCS' operations manager, to ask to be reassigned.[11]   Barclay asked Dawson to attempt to resolve the situation on her own by asking someone to switch with her.[12]   This attempt rapidly escalated into a conflict with one of the other patients in the room, which Barclay intervened to stop.[13]   Because no other resident would willingly swap beds with her, Barclay told Dawson that she would just have to cope with the middle bed.   Dawson felt it would be futile to argue, so she did not pursue the matter further.[14]

Additional incidents arose in connection with Dawson's diabetes.   She was required to give herself insulin injections to manage her blood sugar, and to eat a snack or drink juice in response to abnormal blood sugar readings.[15]   Barclay characterized these accommodations as "special treatment," and appeared to resent Dawson for needing them.[16]   On May 21, 2012, Dawson felt ill and wanted to go to the emergency room.[17]   She was not unable to locate the on-site manager at the

---

[10]*See* Docket No. 57-1 at 19-21.

[11] *See id.*

[12] *See id.*

[13] *See id.*

[14] *See id.*

[15] *See id.* at 6-10.

[16] *See id.*

[17] *See id.* at 13.

3

Case No. 5:13-cv-00881-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO STRIKE

1

2

duty desk or the manager's apartment, nor was she able to locate any other staff.[18]   Eventually, she

called an ambulance to take her to the hospital.[19]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

The next day, NLCS held a staff meeting and decided to discharge Dawson and refer her to

"a program where there is medical staff on duty 24 hours a day."[20]   On May 23, 2012, NLCS

informed Dawson of her discharge, attributing it to the fact that NLCS was "not a medical model

facility" and could not provide the care she required.[21]   Dawson asked the staff to reconsider, and

presented a letter from her doctor indicating that she should be able to continue at NLCS so long as

she continued to follow her recommended course of treatment.[22]   The staff refused to reconsider,

telling Dawson that the decision was final.[23]   Dawson was told that either the staff would drop her

at a bus stop with her belongings, or she could stay in the emergency shelter for 72 hours; Dawson

chose the latter course.[24] The general manager of NLCS, Esther Wei, gave Dawson a letter

indicating that she had complied with the program requirements, and the only reason that she was

being discharged was that NLCS could not meet her medical needs.[25]

On May 26, 2012, NLCS told Dawson that she had to leave the shelter.[26]   In a last ditch

attempt to stay, Dawson called a private social service agency for help, and it sent over a volunteer

19

20

21

22

23

24

25

26

27

28

[18] *See id.*

[19] *See id.* at 13.

[20] *See* Docket No. 50-12.

[21] *See* Docket No. 50-9

[22] *See* Docket No. 57-1 at 24-30.

[23] *See id.* at 30.

[24] *See id.* at 32.

[25] *See* Docket No. 50-10.

[26] *See* Docket No. 57-1 at 36.

Case No. 5:13-cv-00881-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO STRIKE

United States District Court
For the Northern District of California

to mediate with NLCS.[27]  This mediation became hostile, and Dawson called the police.[28]  The

officers said there was nothing that they could do, so Dawson left the facility without anywhere to

stay on Memorial Day weekend.[29]

On February 27, 2013, Dawson filed suit against NLCS and Wei, alleging violations of the

Fair Housing Act,[30] the Fair Employment and Housing Act,[31] the Unruh Civil Rights Act[32] and

California's Unfair Competition Law[33], as well as claims for wrongful eviction, negligence and

breach of the covenant of quiet enjoyment.

## II.    LEGAL STANDARDS

Summary judgment is appropriate only if there is "no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."[34]  There are two distinct steps to a

motion for summary judgment.  The moving party bears the initial burden of production by

identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence

of a triable issue of material fact.[35]  Where the moving party has the burden of proof at trial, he

must "affirmatively demonstrate that no reasonable trier of fact could find other than for the

moving party."[36]  If the moving party does not bear the burden of proof at trial, however, he may

---

[27] *See id.* at 36-38.

[28] *See id.* at 38-41.

[29] *See id*. at 43-44.

[30] 42 U.S.C. § 3601.

[31] Cal. Gov. Code § 12955.

[32] Cal. Civ. Code § 51.

[33] Cal. Bus. & Prof. Code §17200.

[34] Fed. R. Civ. P. 56(a).

[35] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[36] *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).

5

Case No. 5:13-cv-00881-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO STRIKE

*Left margin:* **United States District Court** / For the Northern District of California

satisfy his burden of proof either by proffering "affirmative evidence negating an element of the non-moving party's claim," or by showing the non-moving party has insufficient evidence to establish an "essential element of the non-moving party's claim."[37]  If the moving party meets its initial burden, the burden of production then shifts to the non-moving party, who must then provide specific facts showing a genuine issue of material fact for trial.[38]  A material fact is one that might affect the outcome of the suit under the governing law.[39]  A dispute is "genuine" if the evidence is such that reasonable minds could differ and find for either party.[40]

At this stage, the court does not weigh conflicting evidence or make credibility determinations.[41]  Thus, in reviewing the record, the court must construe the evidence and the inferences to be drawn from the underlying evidence in the light most favorable to the non-moving party.[42]

### III.    DISCUSSION

NLCS' motion for summary judgment raises a number of individual issues with respect to different claims, but as the motion itself acknowledges, Dawson's "FEHA and common law claims are substantively the same as her FHA claim."[43]  Because the other claims will largely stand or fall based on the outcome of the FHA claim, the court focuses on that claim.

---

[37] *Celotex*, 477 U.S. at 331.

[38] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[39] *See Anderson*, 477 U.S. at 248.

[40] *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987).

[41] *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

[42] *See Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[43] Docket No. 48 at 17.

Case No. 5:13-cv-00881-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO STRIKE

1
2
3
4
5
6
7
8
9
10
11
12

As to the FHA claim, NLCS argues that because "[n]either plaintiff's complaint nor her HUD/FEHA charge alleges a disparate impact claim [and there is no] evidence of intentional discrimination," Dawson must rely entirely on a "failure to accommodate" theory for her disability discrimination claims.[44]  In her opposition, however, Dawson highlights several pieces of evidence that could indicate intentional discrimination and that any other reason offered for her dismissal is mere pretext; she points to the discrepancy between the letter that Wei wrote at the time of her dismissal and Wei's testimony about that letter in deposition, Barclay's decisions at the time of her room change and the post hoc creation of an "intervention log."[45]  NLCS's reply complains that Dawson's arguments are based on "inferences" from that evidence and that Dawson "disregard[s]," additional evidence which contradicts the evidence she puts forth.[46]  This very complaint renders summary judgment inappropriate.

13
14
15
16
17
18
19

As described above, summary judgment should only issue where there is "no genuine dispute as to any material fact."[47]  At this stage, "the plaintiff need only present [some] affirmative evidence from which a jury might return a verdict in his favor."[48]  While "a 'scintilla of evidence' . . . is not sufficient to present a genuine issue as to a material fact," the evidence presented need not be overwhelming or make liability more probable than not.[49]  Any questions of credibility or reasonable inferences must be sent to a jury, though any inference proposed by the plaintiff must

20
21

---

22

[44] *Id.* at 12.

23

[45] *See* Docket No. 54 at 9-20.

24

[46] Docket No. 59 at 1-2.

25

[47] Fed. R. Civ. P. 56(c).

26

[48] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

27

[49] *Id.*

28

Case No. 5:13-cv-00881-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO STRIKE

United States District Court
For the Northern District of California

be justifiable.[50]  A justifiable inference need not be "the most likely inference or the most

persuasive inference," so long as it is "rational" or "reasonable."[51]

Here, NLCS asks the court to take such questions away from the jury.  Take, for example,

the conflict between Wei's discharge letter and her testimony regarding that letter.  The letter itself

indicates that as of the moment of her discharge, Dawson had demonstrated "general compliance"

with NLCS' requirements.[52]  Eighteen months later, Wei testified (and would presumably testify at

trial) that Dawson had not demonstrated such compliance, but she wrote the letter anyway to help

Dawson get into another program.[53]  A jury may well believe that testimony and decide to

completely disregard the letter.  But it may not.  The letter, if true, presents compelling evidence

that NLCS' stated justification for Dawson's discharge —that she was not complying with program

requirements — is mere pretext.  The court cannot say as a matter of law that a reasonable jury

could not find a contemporaneous document more persuasive than testimony given in the midst of

contentious litigation to undermine an otherwise damning admission.[54]

Is Dawson's case a slam dunk?  Clearly not.  But it need not be a slam dunk at trial, let

alone at this stage.[55]  If a jury could "reasonably find either that the plaintiff proved his case or that

he did not" based on the evidence presented and inferences proposed by the plaintiff, summary

---

[50] *See id.*

[51] *Id.*

[52] Docket No. 50-10.

[53] *See* Docket No. 50-1 at 34.

[54] *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999) (holding that a factual dispute exists where there is a discrepancy between a contemporaneous letter's content and the sworn testimony of its author); *see also S. California Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1135 (9th Cir. 2004).

[55] *Cf. In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring) (comparing the preponderance of the evidence and beyond a reasonable doubt standards).

Case No. 5:13-cv-00881-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO STRIKE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

judgment must be denied."[56]  Because NLCS's own brief makes it clear that there are multiple instances of conflicting evidence, its motion is DENIED as to Dawson's FHA claim, and because the FHA claim survives, so does Dawson's claim under the FEHA,[57] the Unruh Act,[58] as well as her common law claims for negligence and breach of the covenant of quiet enjoyment.

That leaves only Dawson's claims under the UCL and for wrongful eviction.  Summary judgment is clearly appropriate on the UCL claim because, as Dawson herself acknowledges, the regulations upon which the claim is based do not apply to NLCS,[59] and she cannot assert a new theory now to avoid summary judgment.[60]  As for the wrongful eviction claim, the contract between Dawson and NLCS makes clear that Dawson was "not a tenant of the premises, but is a mere licensee."[61]  In California, only a tenant with a right of exclusive possession may bring a wrongful eviction suit.[62]  Summary judgment is warranted on this claim.

---

[56] *Id.*

[57] Cal. Gov't Code § 12955.6 ("Nothing in this part shall be construed to afford to the classes protected under this part, fewer rights or remedies than the federal Fair Housing Amendments Act of 1988.").

[58] The parties dispute whether Dawson has successfully brought a disparate impact claim, whether the emergency shelter falls under the Unruh Act, and whether Dawson needed to plead a violation of the Americans with Disabilities Act to base her Unruh Act claim on housing discrimination. Under California law, a non-profit shelter organization such as the facility run by NLCS is a "business establishment" under the Unruh Act. *See Curran v. Mount Diablo Council of the Boy Scouts*, 17 Cal. 4th 670, 692 (1998); *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 84 (1985).  Because the facility falls within the scope of the act and Dawson can sustain a claim for intentional discrimination at this stage, the Unruh Act claim survives.  *See Harris v. Capital Growth investors XIV*, 52 Cal.3d 1142, 1175 (1991).

[59] *See* Docket No. 54 at 21-22.

[60] *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271 1291 (9th Cir. 2001).

[61] Docket No. 54 at 21.

[62] *Cf. Martin Marietta Corp. v. Ins. Co. of N. Am.*, 40 Cal. App. 4th 1113, 1123 (1995).

9

Case No. 5:13-cv-00881-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    CONCLUSION

NLCS' motion for summary judgment is GRANTED as to Dawson's wrongful eviction claim and her claim under the UCL, but DENIED as to all other claims.  In addition, Dawson's motion to strike NLCS' evidentiary objections to her opposition is DENIED.  Although the objections may not have been filed "within the reply brief," they were filed exactly six minutes later, and the court, for its own sake, appreciates the clarity of separating the two documents.

**IT IS SO ORDERED.**

Dated: June 3, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

10

Case No. 5:13-cv-00881-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION TO STRIKE